IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLO ARAGONCILLO,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON MOSS-MAGEE REHABILITATION,<br><br>and<br><br>THOMAS JEFFERSON UNIVERSITY,<br><br>Defendants. | CIVIL ACTION NO. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Carlo Aragoncillo, by and through his attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Carlo Aragoncillo, a former employee of Jefferson Moss-Magee Rehabilitation ("JMMR") and Thomas Jefferson University d/b/a Jefferson Health ("TJU") (collectively, "Defendants"). Mr. Aragoncillo has been harmed by Defendants' discrimination and harassment against Mr. Aragoncillo on the basis of his disability or perceived disability, his status as a disbled veteran, Defendants' retaliation against Mr. Araconcillo for seeking accommodation of his disability including having sought and taken leave under the Family and Medical Leave Act ("FMLA"), and Defendants' retaliation against Mr. Aragoncillo for

complaining about discrimination and harassment, culminating in his wrongful termination on June 24, 2024.

2. This action is filed pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the Family and Medical Leave Act, 29 U.S.C. § 2611, et seq. ("FMLA"), and the Pennslyvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims herein pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On July 15, 2024, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On September 2, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With respect to the PHRA claims herein, it has been greater than one year since Plaintiff dual-filed his EEOC Charge as a Complaint with the PHRC.

**VENUE**

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed by Defendnats in this judicial district.

**PARTIES**

9. Plaintiff Carlo Aragoncillo is an adult male citizen and resident of Philadelphia, Pennslyvania and the United States of America.

10. Plaintiff is a qualified individual with a disability within the meaning of the laws at issue in this matter.

11. Plaintiff suffers from Post-Traumatic Strees Disorder ("PTSD").

12. Mr. Aragoncillo has had his disability for a period far in excess of six months.

13. Mr. Aragoncillo's disability affects a major bodily function and substantially limits one or more major life activities.

14. Defendant Jefferson Moss-Magee Rehabilitation operates MossRehab Institute for Brain Health - a program within JMMR located at 91 N. York Road, 3d Floor, Willow Grove, Pennsylvania 19090, where Plaintiff was employed.

15. Defendant Thomas Jefferson University is a Pennsylvania corporation that does business as Jefferson Health, with a corporate address at 1015 Walnut Street, Philadelphia, Pennsylvania 19107, and several other locations within the Commonwealth of Pennsylvania, including at 91 N. York Road, 3d Floor, Willow Grove, Pennsylvania 19090, where Plaintiff was employed.

16. At all relevant times, Defendants each are and have been employers employing more than 500 employees.

17. At all relevant times, employees of Defendants acted as agents and servants for Defendants.

18. At all relevant times, employees of Defendants were acting within the scope of their authority and in the course of employment under the direct control of Defendants.

19. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

20. At all relevant times hereto, Plaintiff Carlo Aragoncillo was an "employee" of Defendants within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

21. At all relevant times hereto, Defendants each were an "employer" and/or "person" under the laws at issue in this matter and are accordingly subject to the provisions of said laws.

22. This cause of action arose out of transactions or occurrences that took place in whole or in part in the Eastern District of Pennslyvania, in Willow Grove, Pennsylvania.

23. Defendants do significant business within the Commonwealth of Pennsylvania.

24. This Honorable Court has jurisdiction over the Defendants.

## FACTS

25. Mr. Aragoncillo began working for Thomas Jefferson University on March 15, 2021 and began working as Outreach Director for the MossRehab Institute for Brain Health, a program of Jefferson Moss-Magee Rehabilitation, in August 2022.

26. During his employment, Mr. Aragoncillo excelled in his position and performed his duties in an excellent and professional manner.

27. Despite his loyalty and consistent performance, Mr. Aragoncillo was subjected to discrimination and harassment on the basis of his disability and/or perceived disability, discrimination on the basis of his status as a disabled veteran, retaliation for seeking accommodation of his disability in the form of leave under the Family and Medical Leave Act and retaliation for complaining about discrimination and harassment, resulting in his wrongful firing on June 24, 2024.

28. Mr. Aragoncillo was diagnosed with and treated for PTSD, including through seeing a physician with the U.S. Department of Veterans Affairs ("VA") and receiving therapy services with a Licensed Clinical Social Worker, whom he has been seeing since approximately August 2019 to process trauma from military service.

29. Defendants were well aware of Mr. Aragoncillo's disability and status as a disabled veteran and discriminated and harassed him on this basis.

30. As a result of the discriminatory and harassing conduct, Mr. Aragoncillo sought accommodation of his disability in the form of taking FMLA leave for approximately six weeks in October and November 2023.

31. Upon his return from FMLA leave, Mr. Aragoncillo faced almost immediate retaliation.

32. Mr. Aragoncillo was subjected to increased scrutiny and criticism regarding his job performance.

33. The persistent harassment, discrimination, and retaliation negatively impacted Mr. Aragoncillo and his work, and particularly exacerbated his disability.

34. On January 5, 2024, Kate O'Rourke, Operations Director and Mr. Aragoncillo's supervisor, provided Mr. Aragoncillo with the contact information for Esther Jeantel, Human Resources Business Manager, stating that Mr. Aragoncillo could request work accommodation if needed.

35. As Mr. Aragoncillo began considering requesting work accommodations for his disability, less than two weeks later, on January 17, 2024, Mr. Aragoncillo was placed on an unwarranted and unjustified Performance Improvement Plan (PIP).

36. No significant concerns regarding Mr. Aragoncillo's performance were raised with him prior to his placement on the PIP.

37. As it became clear to Mr. Aragoncillo that the discrimination, harassment, and retaliation would continue without abatement, Mr. Aragoncillo complained to Ms. Jeantel about the differential and harassing treatment he was experiencing.

38. Specifically, Mr. Aragoncillo emailed Ms. Jeantel on January 24, 2024 to convey his concerns that he was being targeted and singled out because of his disability (PTSD) and status as a disabled veteran.

39. Mr. Aragoncillo also raised concerns that he was being subjected to retaliation for taking FMLA leave, including through the issuance of the PIP and because the discriminatory and harassing conduct against him intensified upon his return from leave.

40. Mr. Aragoncillo concluded his email by requesting that his concerns be addressed.

41. In a continued demonstration of the discrimination, harassment, and retaliation, later that same day, Mr. Aragoncillo received an email from Yevgeniya Sergeyenko, Clinical Director, to whom Mr. Aragoncillo did not directly report, who further scrutinized Mr.

Aragoncillo and his work, particularly in regards to a certain spreadsheet that Mr. Aragoncillo had been working on in December 2023.

42. Mr. Aragoncillo, who had been attempting to focus on the specific roles and responsibilities of his position since returning from FMLA leave, attempted to explain that he had been focusing on outreach efforts as of late.

43. However, Dr. Sergeyenko continued to press the point despite the fact that the expectations Dr. Sergeyenko had regarding the spreadsheet were outside of the scope of Mr. Aragoncillo's job description.

44. Similarly, in a one-on-one meeting between Mr. Aragoncillo and Ms. O'Rourke, Ms. O'Rourke subjected Mr. Aragoncillo and his work to increased scrutiny.

45. Specifically, Ms. O'Rourke criticized a report that he had prepared, stating that she wanted to see him incorporate elements that he had included in previous drafts, despite the fact that she had criticized those very same drafts before.

46. She then asked Mr. Aragoncillo to prepare another iteration of the report.

47. This request, which was approximately the sixth or seventh of its kind, further indicated the inconsistencies in the expectations placed on Mr. Aragoncillo and Defendants' efforts to complicate his work.

48. On February 2, 2024, Ms. O'Rourke demanded that Mr. Aragoncillo remove the word "replied" on the activity log he had submitted to Ms. O'Rourke on January 23, 2024, in which he noted that he had reviewed, replied, and signed his PIP on January 19, 2024, alleging that he had not replied to his PIP.

49. However, Mr. Aragoncillo had printed the PIP and signed it on January 19, 2024 and submitted it on January 22, 2024 because he had worked from home on January 19, 2024 due to a snowstorm.

50. Due to the persistent discrimination, harassment, and retaliation he was experiencing, Mr. Aragoncillo arranged to speak on the phone with Ms. Jeantel on February 2, 2024.

51. During the call, Mr. Aragoncillo reiterated his complaint that he was being subjected to discrimination and harassment on the basis of his disability and/or perceived disability and on the basis of his status as a disabled veteran, as well as his concerns that he was being retaliated against for taking FMLA leave.

52. On February 5, 2024, JMMR was expecting a visit from the Business Development Officer with Recovery Centers of America (RCA).

53. Emily McGuigan, Art Therapist, was scheduled to lead the tour.

54. That afternoon, Ms. O'Rourke emailed Mr. Aragoncillo, copying Dr. Sergeyenko, demanding to know why Mr. Aragoncillo had not provided the tour when he had been available.

55. Mr. Aragoncillo responded that he had met with the Business Development Officer at the beginning of the day and discussed outreach and referrals, but that, in coordination with Ms. McGuigan, it was determined that Ms. McGuigan would lead the tour, as she had previous work experience and history with RCA.

56. This questioning of Mr. Aragoncillo betrayed the larger pattern of Ms. O'Rourke attempting to paint Mr. Aragoncillo as uncooperative and negligent in his duties.

57. Indeed, on February 23, 2024, Ms. O'Rourke again questioned Mr. Aragoncillo, copying Dr. Sergeyenko again, about what commitments he had made regarding another RCA

tour, as the Business Development Officer was expecting clinicians from JMMR to participate in the tour.

58. However, Mr. Aragoncillo had made no specific commitments regarding clinicians participating in the tour, stating that their participation would depend on their availability.

59. Later that same day, Ms. O'Rourke also admonished Mr. Aragoncillo who had requested to split his compensatory time off between two days following a nine-hour work event so that he could attend a doctor's appointment and meeting on those two days, stating, "I think it's important for you to understand that as an exempt employee who holds a director title, it is expected you will work an extra hour when needed."

60. Ms. O'Rourke's constant questioning of Mr. Aragoncillo and disingenuous attempts to portray Mr. Aragoncillo as uncommitted to his work followed an email from Ms. Jeantel on February 19, 2024, in which Ms. Jeantel stated that she wanted to schedule a time to meet with Mr. Aragoncillo and Ms. O'Rourke to discuss Mr. Aragoncillo's concerns.

61. Ms. Jeantel conveyed that this meeting was meant to allow for a "safe space" where open expression and conversations could be had.

62. However, Ms. O'Rourke's conduct clearly created an environment of hostility, and despite Mr. Aragoncillo's complaint and express desire for his concerns to be addressed, there was no improvement in Ms. O'Rourke's discriminatory, harassing, and retaliatory treatment of Mr. Aragoncillo.

63. In fact, the retaliation only increased following Mr. Aragoncillo's complaints.

64. As a result of the incessant discrimination, harassment, and retaliation, Mr. Aragoncillo's disability worsened greatly, and on March 7, 2024, Mr. Aragoncillo suffered an anxiety attack at work, necessitating a visit to the VA Emergency Room.

65. As it became clear that the hostile work environment and discrimination, harassment, and retaliation that Mr. Aragoncillo was regularly facing would only continue to negatively impact him and his disability, Mr. Aragoncillo was compelled to again seek accommodation of his disability in the form of FMLA leave.

66. In or about mid-March 2024, Mr. Aragoncillo submitted his FMLA request paperwork, which was backdated to March 8, 2024.

67. On March 14, 2024, Mr. Aragoncillo's FMLA request was approved.

68. Mr. Aragoncillo remained on a leave of absence due to his disability until June 24, 2024, when he was terminated for refusing to return to work.

69. Defendants insisted that in order to address his concerns of discrimination and harassment, he would need to return to work, and work with his alleged harasser.

70. When Mr. Aragoncillo indicated that he was uncomfortable returning to work under such conditions, he was terminated.

71. Defendants attempted to classify Mr. Aragoncillo's termination as a resignation, however, Mr. Aragoncillo did not resign, he indicated that he was unwilling to return to work under conditions that would require him to return to work with his harasser.

72. In light of the circumstances outlined above, and given his treatment during his employment with Defendants, Mr. Aragoncillo maintains that he was discriminated against and harassed on the basis of his disability and/or perceived disability, on the basis of his status as a disabled veteran, and that he was retaliated against for seeking accommodation of his disability

in the form of leave under the Family Medical Leave Act and for complaining about discrimination and harassment, in violation of the ADA, the PHRA and the FMLA.

73. Mr. Aragoncillo has suffered and continues to suffer mental anguish and severe emotional distress as a direct and proximate result of the actions and/or inactions of Defendants.

74. Defendants and their agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Mr. Aragoncillo severe emotional distress.

75. Mr. Aragoncillo has suffered financial losses, which include, among other things, lost wages and benefits, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendants.

## COUNT I
### The Americans with Disabilities Act, 42 U.S..C. §12101, et seq.

76. Plaintiff Carlo Aragoncillo repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

77. Based on the foregoing, Defendants engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

78. In discriminating against and harassing Mr. Aragoncillo on the basis of his disability and status as a disabled veteran, and/or because Defendants regarded Mr. Aragoncillo as disabled, and in retaliating against Mr. Aragoncillo, Defendants violated the ADA.

79. Defendants' violations were intentional and willful.

80. Defendants' violations warrant the imposition of punitive damages.

81. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendants, Plaintiff Carlo Aragoncillo has sustained a loss of earnings, severe

emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as pack pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

82. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## COUNT II
### The Family and Medical Leave Act, 29 U.S.C. § 2611, et seq.

83. Plaintiff Carlo Aragoncillo repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

84. Defendants' conduct, in retaliating against Mr. Aragoncillo for requesting and taking leave pursuant to the Family and Medical Leave Act, violated the FMLA.

85. Defendants' violations of the FMLA were intentional and willful, as Defendants knew or should have known the requirements of the FMLA.

86. Defendants' violations of the FMLA warrant the imposition of liquidated damages.

87. Defendants' violations of the FMLA warrant the imposition of punitive damages.

88. As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff Carlo Aragoncillo has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of earning power, back-pay, front-pay, interest due thereon, and has incurred attorneys' fees and costs.

89. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## COUNT III
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

90. Plaintiff Carlo Aragoncillo repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

91. Based on the foregoing, Defendants engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

92. In discriminating against and harassing Mr. Aragoncillo on the basis of his disability and status as a disabled veteran, and/or because Defendants regarded Mr. Aragoncillo as disabled, and in retaliating against Mr. Aragoncillo, Defendants violated the PHRA.

93. Defendants' violations were intentional and willful.

94. Defendants' violations warrant the imposition of punitive damages.

95. As the direct and proximate result of Defendants' violations of the Pennsylvania Human Relations Act, Plaintiff Carlo Aragoncillo has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

96. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## PRAYER FOR RELIEF

97. Plaintiff Carlo Aragoncillo repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Carlo Aragoncillo respectfully requests that this Court enter judgment in his favor and against Defendants and Order:

   a. Appropriate equitable relief including reinstatement or front pay;
   b. Defendants to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendants to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of their unlawful conduct;

d. Defendants to pay Plaintiff punitive damages;

e. Defendants to pay Plaintiff liquidated damages;

f. Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

g. Defendants to pay Plaintiff's costs of bringing this action and his attorneys' fees;

h. Plaintiff be granted any and all other remedies available pursuant to the ADA, the FMLA, the PHRA and any other applicable statutes or common law; and

i. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Carlo Aragoncillo hereby demands trial by jury as to all issues so triable.

By: */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
1617 John F. Kennedy Boulevard
Suite 1254
Philadelphia, PA 19103
(215) 569-2500

*Attorneys for Plaintiff Carlo Aragoncillo*

Dated: November 26, 2025